Blake D. Miller (4090)
Deborah R. Chandler (12057)
**MILLER TOONE, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
E-mail: miller@millertoone.com
         chandler@millertoone.com
Proposed Attorneys for the Debtor

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **In re:**<br><br>**UD DISSOLUTION CORP.**<br><br>**Debtor.** | **Bankruptcy Case No. 14-32546**<br>**Chapter 11**<br><br>**Honorable Joel T. Marker**<br><br>**(Filed Electronically)** |

---

## UD DISSOLUTION CORP.'S PRELIMINARY STATUS REPORT

---

UD Dissolution Corp. ("Debtor") submits the following preliminary status report:

### I.      HISTORY OF THE DEBTOR

#### a.  General Overview

The Debtor was founded in 2010 as V3 Systems, Inc.  V3 System Inc. previously

engaged in the business of developing, marketing, selling and supporting virtual desktop cloud

solutions for enterprise customers the "Business").   On February 11, 2014, V3 Systems, Inc.,

entered into an Asset Purchase Agreement ("APA") with Sphere 3D Corporation ("Sphere

3D") wherein Sphere 3D purchased all of V3 Systems, Inc.'s assets, properties, rights and

interests, as well as the name V3 Systems, Inc., in exchange for four million dollars ($4,000,000) in cash and shares of the common stock of Sphere 3D having an aggregate value of Five Million Seven Hundred Thousand Dollars ($5,700,000).  In addition, the Debtor was entitled to an Earn-Out Provision upon the Business earning or otherwise receiving certain revenue amounts within the first 15 months following the sale of the Business. These Earn-Out Provisions were as follows:

(i)     Once Million Two Hundred Fifty Thousand Dollars ($1,250,000) upon the Business achieving Earn-Out Revenue equal to at least Five Million Dollars ($5,000,000).

(ii)    An additional One Million Two Hundred Fifty Thousand Dollars ($1,250,000) upon the Business achieving, in the aggregate, Earn-Out Revenue equal to at least Seven Million Five Hundred Thousand Dollars ($7,500,000).

(iii)   An additional One Million Two Hundred Fifty Thousand Dollars ($1,250,000) upon the Business achieving, in the aggregate, Earn-Out Revenue equal to at least Ten Million Dollars ($10,000,000).

(iv)    An additional One Million Two Hundred Fifty Thousand Dollars ($1,250,000) upon the Business achieving, in the aggregate, Earn-Out Revenue equal to at least Twelve Million Five Hundred Thousand Dollars ($12,500,000).

After the sale of the name V3 Systems, Inc., the Debtor changed the name of the Corporation to UD Dissolution Corp. as required by the APA.

1181091.2                                      2

### b. Events Leading to Bankruptcy

The Asset Purchase Agreement closed on March 21, 2014. The cash proceeds from the APA were not adequate to pay all of Debtor's debts as of the date of closing, but were sufficient to pay closing costs and certain claims which encumbered any of the assets to be transferred which allowed the transaction to close. As a consequence, and because the stock and earn-out components of the transaction would not be liquid for several weeks, Debtor successfully negotiated payment terms with several of its creditors and professionals based on the predicted timing of liquidity events for the stock and earn-out components. Four of those creditors either had security interests in stock or confessions of judgment, or both. Another creditor was the Internal Revenue Service which had been threatening a levy for certain unpaid taxes. Debtor's plan was to wind up and dissolve non-judicially under applicable state law. State law, however, does not provide for a stay against creditor action.

Debtor received restricted publicly trading stock of Sphere 3D (then trading on the Toronto Stock Exchange and now trading on NASDAQ) in the transaction which, under applicable Canadian law (similar to US Rule 144), applied through the exemptions of Regulation S and Rule 904 of U.S. securities law, should have become unrestricted on July 24, 2014. These certificated securities contained a restrictive legend when issued which, once the statutory restriction period expires, is "lifted" through a transfer agent issuing a new unrestricted certificate which process, in Canada, requires the consent of the issuer of the securities. These consents are, in normal commerce, perfunctory and routine. However, Sphere 3D, in order to control rate of sale of its securities into the market at the expense of Debtor, refused consent for no defined reason and required draconian agreements imposing a "leak out" ceiling (a limitation on the percentage of

1181091.2                                   3

shares that a holder receiving the securities in an acquisition can sell at any one time) and other terms not found in the APA to consent to lifting the legend.  This wrongful conduct delayed sales of the shares (which is Debtor's principle source of liquidity) into November of 2014 and caused Debtor to be unable pay administrative costs and to be unable to meet negotiated payment terms with several creditors, particularly the IRS and creditors with security agreements and/or confessions of judgment.  All of those creditors threatened adverse actions against the Debtor. Debtor was able to pay a number of its creditors in part once the shares were starting to sell on the market, but not quickly enough to keep creditor actions at bay.

Sphere further exacerbated the Debtor's post-closing liquidity problems by breaching the Earn-Out Provisions of the APA.  As noted above, in addition to the cash and stock received in the APA transaction, the APA provides for an earn-out of $5,000,000.00 predicated on certain revenue milestones from sales of the Debtor's virtual desktop appliance technology being achieved.  The APA requires that Sphere maintain the Debtor's business as a separate business unit, that Sphere provide specified levels of capital support for the business unit, and that Sphere appoint an officer of the Debtor as a director on the acquisition entity.  The remedy for breach of these provisions in the APA is acceleration and immediate payment of the entire earn-out.  Sphere breached all three of the provisions; it has not maintained the Debtor's enterprise as a separate business unit; it has failed to provide the funding required to operate the unit; and it did not appoint a Debtor officer to the board of the acquisition corporation.  In addition, Sphere has failed to provide Debtor with required monthly earn out reports for over three months prepetition.

As a result of mounting threats of creditor action resulting from inability to pay many creditors on agreed terms as well as the continuing progress of certain prepetition litigation

1181091.2                                    4

(specifically the Anderer and Daybreak claims described in the Adversary Proceeding discussion below), all or each of which could have resulted in a significant loss of assets available for ratable distribution, Debtor decided to file this petition to obtain a stay (not otherwise provided by state law) and to utilize a centralized forum within which to decide disputes and marshal its assets, all to the benefit of its creditors and shareholders as a whole.  Accordingly, on November 26, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

## II.     TYPE OF PLAN

The debtor is a dissolved Nevada corporation.  The debtor received its Certificate of Dissolution from the State of Nevada on November 21, 2014.  Accordingly, under Nevada Law debtor is no longer authorized to continue business. The debtor anticipates filing a plan of liquidation that will allow the Debtor to sell its remaining shares of Sphere 3D Stock, pay off its creditors, and wind down the corporation.

## III.     CRAMDOWN

The Debtor believes it can work with its creditors to formulate a consensual plan of liquidation.  However, the Debtor reserves its right to seek confirmation of his plan of liquidation pursuant to sections 1129(a)(8) and 1129(b) of the Bankruptcy Code if necessary.

## IV.     VALUATION OF ASSETS

The Debtor does not anticipate any litigation concerning the valuation of assets at this time.

1181091.2                                                          5

## V.   CASH COLLATERAL AND ADEQUATE PROTECTION

The Debtor is not aware of any creditors that hold a lien or claim an interest upon the

Debtor's cash, or upon assets that the Debtor anticipates to be reduced to cash. As such, the Debtor

does not anticipate any motions concerning cash collateral.

## VI.   ADVERSARY PROCEEDINGS

The Debtor anticipates the following adversary proceedings will be necessary:

a.   *Debtor v. Sphere 3D Corporation and John Does:*

   i.   **Interference Claims:**  Sphere 3D Corporation ("Sphere") is the purchaser

   of Debtor's assets, prepetition, under the terms of the APA.  Debtor received

   restricted publicly trading stock of Sphere (then trading on the Toronto Stock

   Exchange and now trading on NASDAQ) in the transaction which, under

   applicable Canadian law, applied through the exemption of Regulation S and

   Rule 904 of U.S. securities law, should have become unrestricted on July 24,

   2014.  These certificated securities contained a restrictive legend when issued

   which, once the statutory restriction period expires, is "lifted" through a

   transfer agent which process, in Canada, requires the consent of the issuer of

   the securities.   These consents are, in normal commerce, perfunctory and

   routine.  Sphere, however, in order to control the rate of sale of its securities

   into the market, refused consent for no defined reason and required draconian

   agreements imposing a "leak out" ceiling (a limitation on the percentage of

   shares that a holder receiving the securities in an acquisition can sell at any

one time) and other terms not found in the APA to consent to lifting the legend.  This wrongful conduct delayed sales of the shares (which is Debtor's principle source of liquidity) into November of 2014 which caused Debtor to be unable pay administrative costs and unable to meet negotiated payment terms with several creditors, resulting in the need to file this case.    The intended adversary claims include breach of contract (there are provisions regarding lifting the legend in the APA), intentional interference with contract relations, tortious interference with contract, and possible securities law claims, among others.    Damages would consist of the monetary spread between the trading price on the securities which could have been realized on and after July 24, 2014 and the prices ultimately realized to date, plus consequential damages flowing from the delays in securing timely liquidity resulting in Debtor's inability to make promised creditor payments.  The John Doe defendants are contemplated to be those officers of Sphere directly responsible for this wrongful conduct.

ii.  **Breach/Turnover Claims:**   Sphere is holding back 95,000 of the shares paid in the transaction under a material adverse change clause in the APA which Debtor asserts has been fulfilled, which requires Sphere 3D to release the shares.  Sphere 3D has refused to do so.  Debtor's adversary claims would include breach of contract and turnover under Section 543 of the Bankruptcy Code.   Also, Sphere is holding $100,000.00 of the cash proceeds of the APA transaction and an additional 95,000 of the shares paid

in the transaction under a litigation holdback addendum to the APA

(Schedule 6.13A) regarding the *Anderer* litigation (described below) which

Debtor believes must be turned over under Section 543 of the Bankruptcy

Code.

iii.   **Breach/Earn-out Acceleration:**  In addition to the cash and stock received

in the APA transaction, the APA provides for an earn-out of $5,000,000.00

predicated on certain revenue milestones from sales of the Debtor's virtual

desktop appliance technology being achieved.   The APA requires that

Sphere 3D maintain the Debtor's business as a separate business unit, that

Sphere 3D provide specified levels of capital support for the business unit,

and that Sphere appoint an officer of the Debtor as a director on the

acquisition entity.  The remedy for breach of these provisions in the APA is

acceleration and immediate payment of the entire earn-out.   Sphere has

breached all three of the provisions; it has not maintained the Debtor's

enterprise as a separate business unit; it has failed to provide the funding

required to run the unit, and it did not appoint a Debtor officer to the board

of the acquisition corporation.  Debtor's causes of action and remedies will

be breach of contract,  acceleration of the earn-out, and payment of the full

earn-out immediately,

b.   *Debtor v. Abundance Capital Corporation:*  Abundance Capital ("Abundance")

invested $750,000.00 in the Debtor's Series A preferred shares.   Abundance later

claimed that it is entitled to rescission of that purchase, alleging that Debtor

8

misrepresented whether the Series A round of financing was fully funded and closed when Abundance made its investment. Debtor denied those allegations. Abundance was also issued a warrant for Debtor's common shares as part of the original investment transaction. In an attempt to resolve this dispute, the Debtor issued an amended warrant, converting the original warrant to a redeemable warrant. Abundance continued to press its claims (which included a lawsuit filed in New York state court) and, in June 2014, after protracted negotiations, and in order to avoid expensive litigation, Debtor entered into a Settlement Agreement and Mutual Release with Abundance (through its particular fund from which the investment came) structured as a rescission of the Series A investment, and payment of the rescission amount and amount of the amended redeemable warrant under a complex set of payment priority terms, accompanied by a confession of judgment, a security interest and other monetary penalties. Due to the conduct of Sphere 3D described above, Debtor was unable to meet the payment terms of the Settlement Agreement and Mutual Release causing Abundance to threaten to realize on remedies for breach which would have significantly harmed the Debtor's ability to make payments to its creditors and ultimately its shareholders (although Debtor paid Abundance $375,000.00, a part of the claim, prepetition after stock sales commenced). In assessing this claim post-petition, Debtor has concluded that Section 510(b) of the Bankruptcy Code may apply to all or part of the Abundance claim and that Debtor would have no discretion over application of Section 510(b) to this claim due to the mandatory nature of Section 510(b). Proceedings will be

necessary to determine application of Section 510(b).  Debtor is uncertain at this

time whether this proceeding would be brought through an adversary proceeding,

a contested matter (claim objection), motion, or in the context of confirmation of a

plan, all options provided by Bankruptcy Rule 7001(8).

c.  *Michael Anderer v. Debtor:*   This matter consists of prepetition litigation pending

in the United States District Court for the District of Utah known as *Michael*

*Anderer v. Inaura, Inc., et al,* Civil No. 2:13-cv-00111 ("District Court Case").

Debtor is one of numerous defendants in this case which was commenced on

February 11, 2013.   Debtor has asserted and intends to assert defenses,

counterclaims, and third party complaints at the appropriate time although it has

not been finally determined whether this litigation will proceed in this Court or in

the District Court.   Anderer alleges that he had an equity or direct interest in the

intellectual property of Inaura, Inc.  He further alleges that some of the directors of

Debtor at its founding, which were former directors of Inaura, wrongfully used the

intellectual property of Inaura in the creation of the appliance which was Debtor's

key product.  Debtor denies those allegations.  Anderer makes other allegations

against the former directors individually not related to the Debtor.  On September

22, 2014, an evidentiary hearing was held before the District Court (Honorable

Robert Shelby) on Anderer's motion for a preliminary injunction which sought to

halt Debtor's sale of its Sphere 3D shares and to appoint a receiver for Debtor.

After taking several hours of evidence, Judge Shelby denied Anderer's motions on

the merits.   One of the contemplated third party complaints is against Peter

Bookman, a former director and officer of Debtor, to nullify his separation agreement with Debtor, and to seek damages for misconduct, breach of fiduciary duty, perjury, and related claims. Mr. Bookman asserts a claim for money under a prepetition agreements which has been in dispute prepetition. The Bookman claim may be liquidated/determined in the District Court case or in a contested proceeding objecting to the claim.

d. *Debtor v. Peter Bookman:* Peter Bookman ("Bookman") is a former officer and director of Debtor who resigned as a director on April 21, 2014. Bookman is now employed by Sphere 3D. Earlier, Debtor entered into what is fundamentally a separation agreement with Bookman when Bookman was removed as an officer of Debtor (he continued to be a director). Bookman asserts that he is owed between $200,000 and $800,000 under the separation agreement. Debtor asserts a number of defenses and counterclaims against this claim (although no prepetition litigation was commenced) including breach of fiduciary duty as a director and officer for entering into unauthorized transactions, misrepresentations to equity holders, conspiring with Anderer and Sphere against Debtor's interests, interfering with potential equity investments in Debtor, and dereliction of duty as an officer and director. Debtor has not yet determined whether this dispute will be resolved in an adversary proceeding, a contested matter pre-confirmation, or as part of the confirmation of a plan.

e. *Daybreak Capital/BA Securities Arbitration* - On April 2, 2013, Debtor entered into an investment banking fee agreement with Daybreak Capital Partners ("Daybreak")

and its correspondent FINRA/SIPC licensed broker, BA Securities Inc. ("BA")
(Daybreak and BA will collectively be referred to as "Daybreak Parties").  Under
the Agreement (which was subject to an amendment dated August 27, 2013),
Daybreak Parties were to provide investment banking services such as finding new
capital investment for UD Dissolution (then known as V3 Systems, Inc.) and/or
procuring a purchaser of its assets or as a going concern.  In exchange for those
services, Daybreak Parties would be paid a cash fee depending upon the type and
amount of any transaction.   Following the closing of the APA, Daybreak Parties
were paid $248,871.00 from the closing proceeds.  Daybreak Parties then issued an
invoice to Debtor claiming additional fees and a right to receive, in kind, 48,613
shares of the Sphere 3D stock Debtor received in the APA transaction at the deal
price of the APA.  Debtor objected to the invoice on the basis that it exceeds the
amounts owed under the written contracts.  Daybreak Parties claim an oral or email
modification was made entitling them to the invoiced amounts.  The contracts
provide for FINRA Arbitration of disputed claims.  On September 16, 2014,
Daybreak Parties commenced a FINRA arbitration case entitled *BA Securities, LLC
v. V3 Systems, Inc., n/k/a/ UD Dissolution Corp*, Financial Industry Regulatory
Authority Case No. 14-2814 ("Arbitration").   Debtor filed its Answer to the
Arbitration Demand 45 days after service of the demand under FINRA Rules. The
answer denies the allegations that Daybreak Parties are entitled to the invoiced
compensation.   The only additional activity in the case pre-petition was FINRA

sending out the list of proposed arbitrators for the selection/peremptory challenge

process.    Debtor intends to bring this case into this Court for adjudication.

## VII.    ENVIRONMENTAL ISSUES

The Debtor does not hold, own or possess any legal or equitable interest in property that

could potentially give rise to claims or litigation based upon federal or state environmental laws.

## VIII.    OBJECTIONS TO CLAIMS

Currently, there are 17 claims listed on Schedules D, E, and F that are categorized as

contingent, unliquidated, or disputed.  However, as of the date this preliminary status report

was prepared, no proofs of claim had been filed. The Debtor reserves its right to object if he

discovers issues regarding the amounts stated and/or the validity and basis of the claims. The

proof of claim deadline has not passed and Debtor anticipates that additional proofs of claim

may be filed. The Debtor reserves his right to examine, investigate and, if appropriate, object

to any filed or scheduled claims in this Case.

## IX.    POST-CONFIRMATION SALE OF ASSETS

The Debtor is still formulating its plan of reorganization. Debtor, however,

anticipates filing a §363 motion for the sale of its shares of Sphere 3D Stock, which will require

the involvement of the Court.

## X.    ANTICIPATED PROFESSIONAL FEES

At this time, the Debtor expects to employ the following professionals for and on behalf

of the estate:

| Profession – Role | Name | Expected Amount of Compensation |
|---|---|---|
| Attorneys – General Bankruptcy Counsel | Blake Miller, Deborah Chandler and the law firm of Miller Toone ("MT") | Reasonable compensation for actual and necessary services at MT's regular hourly rates.    See application to employ Miller Toone (Docket No. 6) for more particular information |
| Attorneys – Special Counsel | Jeffrey Weston Shields and the law firm of Jones Waldo Holbrook & McDonough | Reasonable compensation for actual and necessary services at regular hourly rates regarding all litigation, adversary proceedings, contested claims and turnover proceedings between Debtor and Abundance Capital, Peter Bookman, Daybreak Capital, and Sphere 3D.   See Application to Employ Special Counsel (Docket No. 8) for more particular information. |
| Attorneys – Special Counsel | Brennan Moss and the law firm of Pia Anderson Dorius Reynard & Moss | Reasonable compensation for actual and necessary services at regular hourly rates regarding all legal issues relating to the Michael Anderer lawsuit, Daybreak Capital's FINRA Arbitration, Cathy Voutaz litigation claims, Volker Wiora claims, and dissolution payments to various creditors. See Application to Employ Special Counsel (Docket No. 14) for more particular information. |
| Accountant | Mark Hashimoto and Piercy Bowler Taylor & Kern | Reasonable compensation for actual and necessary services at regular hourly rates regarding all accounting services for the Debtor's estate related to the Chapter 11 bankruptcy, including tax and accounting assistance to prepare the estate's tax returns, monthly financial reports, and disclosure statement and plan of reorganization. See Application to Employ Accountant (Docket No. 10) for more particular information. |

## XI.   SMALL BUSINESS CASE

Upon information and belief, the Debtor's total debts are greater than $2,343,300. Even to the extent the total debts were less than this threshold amount, the Debtor does not believe it is a "small business debtor" or that this is a "small business case."

## XII.   REQUIREMENTS OF CHAPTER 11 DEBTOR IN POSSESION

Upon information and belief, the Debtor has complied, and continues to comply, with all of his duties under sections 521, 1106 and 1107 of the Bankruptcy Code, as well as the requirements of Local Rule 2081-1.

## XIII.   SINGLE ASSET REAL ESTATE

The Debtor does not hold, own or possess any legal or equitable interest in "single asset real estate" as such term is defined in 11 U.S.C. §§ 362(d)(3) and 101(51B). Furthermore, the Debtor's business and business operations are not limited solely to the business of operating real property constituting a single property or project.

WHEREFORE, the Debtor respectfully submits this preliminary status report, and requests such relief as is just and equitable under the circumstances.

Dated: December 22, 2014.

MILLER TOONE, P.C.


*/s/ Deborah R. Chandler*
Deborah R. Chandler
Blake D. Miller
*Attorneys for Debtor UD Dissolution Corp.*

<u>**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**</u>

      I hereby certify that on December 22, 2014, I electronically filed the foregoing **INITIAL STATUS REPORT** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system:

- ***Deborah Rae Chandler***   *chandler@millertoone.com*
- ***Blake D. Miller***  *miller@millertoone.com;millermobile@gmail.com;*
  *miller@ecf.inforuptcy.com;miller.blaked@gmail.com*
- ***United States Trustee***   *USTPRegion19.SK.ECF@usdoj.gov*
- ***Matthew M. Boley***   *mmb@pkhlawyers.com*

Dated this 22nd day of December, 2014.

                      MILLER TOONE, P.C.


                      /s/ *Deborah R. Chandler*
                      Blake D. Miller
                      Deborah R. Chandler
                      Attorneys for Debtor

1181091.2