Blake D. Miller (4090)
Deborah R. Chandler (12057)
**MILLER TOONE, P.C.**
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
E-mail: miller@millertoone.com
       chandler@millertoone.com

Proposed Attorneys for the Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **In re:**  **UD DISSOLUTION CORP.**  **Debtor.** | **Bankruptcy Case No. 14-32546**  **Chapter 11**  **Honorable Joel T. Marker**  **(Filed Electronically)** |

## MOTION FOR §363 SALE OF STOCK

UD Dissolution Corp, as Debtor and Debtor-In-Possession, seeks Court permission to sell up to the 800,167 shares of publicly-trading Sphere 3D Corporation stock acquired by UD Dissolution as part of the purchase price received for a prepetition sale of its assets, with all net proceeds free of security interests to be held subject to further Court order or plan confirmation. This motion is based on the business judgment of UD Dissolution that it is critical to start to convert such shares to cash at a rational pace, in light of market factors, at prices which are likely to pay all creditors in full, rather than place all shares at risk in an uncertain market following confirmation of a plan of liquidation.

## JURISDICTION

This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. §1334.  This is a core proceeding within the meaning of 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

1. UD Dissolution Corp., formerly known as V3 Systems, Inc., previously engaged in the business of developing, marketing, selling and supporting virtual desktop cloud solutions for enterprise customers.

2. On February 14, 2014, V3 Systems entered into an agreement ("Asset Purchase Agreement") to sell its assets to Sphere 3D Corporation for $14,700,000 ("Purchase Price").

3. The Purchase Price consisted of (a) the delivery at closing of (i) $4,000,000 cash, (b) 1,089,867 shares of publicly traded Sphere 3D stock valued at $5.23 a share or a total of $5,700,000 (the "Sphere Stock"), and (b) an earn-out having a potential value of up to $5,000,000.

4. On March 31, 2014 ("Closing"), the transaction with Sphere 3D Corporation closed and the cash and Sphere Stock delivered to V3 Systems.  The assets sold by V3 Systems included its name.  Therefore, after the asset purchase, V3 Systems changed its name to UD Dissolution Corp.

5. At Closing, the liabilities of UD Dissolution exceeded the cash portion of the asset purchase price.  To satisfy its liabilities, UD Dissolution needed to sell the Sphere Stock.

2

6. Pursuant to the Asset Purchase Agreement, the Sphere Stock was restricted stock, not capable of being sold or traded for a period of four months under Canadian law and six months under United States law.

7. UD Dissolution waited until after the applicable holding periods before attempting to sell the Sphere Stock. When it attempted to do so, however, its efforts were blocked by Sphere 3D.

8. On October 10, 2014, UD Dissolution and Sphere 3D entered into an agreement whereby Sphere 3D would cease its efforts to block the sales of the Sphere Stock if UD Dissolution agreed to a "leak out provision" governing the amount and timing of sales of its Sphere Stock ("Leak Out Agreement"). A critical element of the Leak Out Agreement provided that Sphere 3D fund cash deficiencies caused by any delay in UD Dissolution selling sufficient Sphere Stock to satisfy its liabilities, including delays caused by the leak out provision.

9. Sphere 3D, however, immediately breached the Leak Out Agreement by failing to fund UD Dissolution's cash deficiencies.

10. The failure of Sphere 3D to fund the deficiencies and UD Dissolution's inability to sell enough of its Sphere Stock created enormous pressure from creditors. In order to avoid a race to the courthouse benefiting only a single creditor or group of creditors, UD Dissolution filed a voluntary petition for Chapter 11 on November 26, 2014.

11. UD Dissolution intends to file a plan of liquidation, adopting the priorities of the Bankruptcy Code.

## Sphere Stock

12. At Closing, the Sphere Stock traded on the Toronto stock exchange. The Sphere Stock currently trades on the NASDAQ exchange under the ticker symbol "ANY."

13. As a publicly traded small cap stock, the value of the Sphere Stock has significantly varied during the last year. During this period, the stock has ranged between a low of $4.87 and a high of $11.46, and the 30 day weighted average stock price was $5.51 per share.

### Security Interest

14. Catherine Voutaz holds a security interest in 180,000 shares of the Sphere Stock to secure a claim of approximately $748,000.

15. The Debtor proposes that Ms. Voutaz receive, at the closing of the sale of the stock, the net proceeds of the sale of the stock securing her claim up to the amount of her secured claim. The stock securing the Voutaz secured claim will be sold on a pro rata basis, calculated by the ratio of the Voutaz secured shares to the total outstanding Sphere Stock owned by the Debtor. Thus, for every stock sale, 22.5 percent of the shares sold (180,000/800,167) shall be Voutaz secured shares.

### RELIEF REQUESTED

16. UD Dissolution seeks entry of a Court order authorizing, but not directing, UD Dissolution to sell outside of the ordinary course of business up to its 800,167 shares of Sphere Stock. UD Dissolution proposes that it be granted authority to sell this stock for any price greater than ninety percent of the 30 day weighted average. If, however, market conditions (e.g., declining market facing high volume sells) indicate that sales at prices lower than this are necessary to prevent loss to the estate, the Debtor seeks authority to sell at lower prices by providing twenty-four hours notice to the unsecured creditors committee and the United States Trustee of this intention identifying the amount of Sphere Stock sought to be sold and the reasons therefore. If no objection is received within twenty-four hours, the Debtor can place the appropriate sales order.

17. With the exception of payments to Ms. Voutaz to secure the release of her lien, all proceeds of such sales shall be held subject to further Court order or a confirmed plan of liquidation. Ms. Voutaz shall receive the net proceeds of sales of the stock securing her claim until her claim is paid in full.

18. The Debtor anticipates filing a plan of liquidation in which all creditors are paid in full.

19. It is the business judgment of UD Dissolution that it is better to have the ability to convert the Sphere Stock into cash at favorable market prices than risk an uncertain public market after confirmation of a future plan of liquidation.

20. Because this motion is necessitated by the need to mitigate losses in the value of the Sphere Stock occasioned by the public market, the order authorizing the motion should be effective upon entry pursuant to Bankruptcy Rule 6004(h).

## BASIS FOR RELIEF REQUESTED

21. 11 U.S.C. §363(b)(1) provides, in pertinent part, that the Debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

22. For a §363(b) sale outside the ordinary course of business, the Debtor needs to show (1) a sound business reason for the sale; (2) adequate and reasonable notice to interested parties; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith. *In re Medical Software Solutions,* 286 B.R. 431 (Bankr. D. Utah 2002).

23. "Where the Debtor articulates a sound business reason for the proposed sale, courts will generally not second-guess such business determinations." *See, Comm. Of Asbestos-*

5

*Related Litigants v. Johns-Manville Corp (In re Johns-Manville Corp)*, 60 B.R. 612 (Bankr. S.D. New York 1986). Instead, the law vests the Debtor's decision to sell or otherwise dispose of assets outside the ordinary course of business with a strong presumption that the Debtor's management, in approving the sale or other disposition, "'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company.'" *Official Comm. Of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.),* 147 B.R. 650 (S.D. N.Y. 1992).

24. Just as the decision to engage in the sale or other disposition is, in the end, a business judgment, so too is the decision regarding timing of the transactions. See, e.g., *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380 (2nd Cir. 1987). Courts have repeatedly upheld a debtor's business judgments to sell under §363(b) in the early days of a Chapter 11 case. *See, e.g.*, *Bay Harbour Management, L.C. v. Lehman Brothers Holdings, Inc. (In re Lehman Brothers holdings, Inc.),* 415 B.R. 77 (S.D.N.Y. 2009) (affirming bankruptcy court's approval of sale of debtor's investment banking business three days after the filing of sale motion). Approval under §363(b) is appropriate where the value to be realized by an asset is based on timing. *See, e.g., In re Andy Frain Services. Inc.*, 798 F.2d 1113 (7th Cir. 1986); *see, Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S.Ct. 2326, 2342 (2008) ("[O]ne major reason why a transfer may take place before rather than after a plan is confirmed is that the preconfirmation bankruptcy process takes time… And a firm (or its assets) may have more value… where a sale takes place quickly….")

### A. The Proposed 363(b) Sale is Predicated on Timing.

As the major asset of this liquidating Chapter 11 case, the Debtor will sell the Sphere Stock. The only issue is when. As a commodity whose value is dependent on a public

exchange, it is important that those sales occur at favorable trading times. This may, or may not, coincide with the confirmation process. Thus, the Debtor requires authority to take advantage of opportune times in the market to sell assets while avoiding having to sell at an inopportune time.

### B. The Proposed Sale Is Not a Sub Rosa Plan.

Selling the Sphere Stock will not dictate the terms of the plan of reorganization. UD Dissolution is, by nature, no longer conducting business and is in a dissolution mode. Its proposed plan will, by necessity, be a plan of liquidation. All the Debtor seeks by this motion is the right to maximize the value of its Sphere stock. How such shares are distributed will be determined in accordance with the confirmation process. As explained by the court in *In re Trans World Airlines*:

> The purpose of a Section 363(b) sale is to transform assets . . . into cash in an effort to maximize value. Distribution of the value generated in accordance with §1129 and other priority provisions occurs and is intended to occur subsequent to the sale.

*In re Trans World Airlines, Inc.,* 2001 WL 1820326 at 11 (Bankr. Del. 2001).

Nothing in the proposed §363 sale shall dictate the terms of future plan of liquidation. As such, it is not a prohibited sub rosa plan. See, e.g., *Abel v. Shugrue (In re Ionosphere Clubs, Inc.),* 184 B.R. 648 (S.D.N.Y. 1995) (sub rosa plan exists where transaction dictates terms of plan); *Official Comm. Of Unsecured Creditors v. Cajun Electric Power Co Op, Inc., (In re Cajun Electric Power Co Op, Inc.),* 119 F.3d 349 (5th Cir. 1987) (proposed transaction disposed of all claims and restricted creditors right to vote) *In re Condere Corp.,* 228 B.R. 615 (Bankr. S.D. Miss. 1998) (proposed sale would dictate how proceeds will be distributed). Here, the Debtor seeks merely to convert the Sphere Stock into cash. All other issues, including amounts of claims and distribution of those proceeds will be dealt with in the confirmation process.

### C. The Sale Prices will be Market Based.

The price for the sales of the Sphere Stock is determined by the public market. U.S. Dissolution will not establish that price. By definition, any sales of the Sphere Stock will be at the market price. Having the ability to sell at prices at favorable market times rather than wait for market conditions that will exist post confirmation will better protect creditors and the estate.

In addition, UD Dissolution is not dictating who will be the buyers of the Sphere Stock. Rather, such buyers will be those participating in the public market for such shares.

### D. The Debtor may sell the Collateralized Sphere Stock under §363(k).

11 U.S.C. §363(k) provides that the Debtor:

may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if —

> **(1)** applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> **(2)** such entity consents;
>
> **(3)** such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> **(4)** such interest is in bona fide dispute; or
>
> **(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

It is the Debtor's belief that Ms. Voutaz has or will consent to the proposed sale. In addition, the proposed sale price is greater than the value of Ms. Voutaz's lien on the Sphere Stock. Last, Ms. Voutaz could be compelled to accept payment in exchange for her security interest in the stock. Thus, subsections (2), (3), and (5) of §363(f) are satisfied.

## **CONCLUSION**

For the reasons articulated above, UD Dissolution requests authority, but not the requirement, to sell up to its 800,167 Sphere Stock shares for any price greater than ninety percent of the 30 day weighted average. If, however, market conditions (e.g., declining market facing high volume sells) indicate that sales at prices lower than this are necessary to prevent loss to the estate, the Debtor seeks authority to sell at lower prices by providing twenty-four hours notice to the unsecured creditors committee and the United States Trustee of this intention identifying the amount of Sphere Stock sought to be sold and the reasons therefore. If no objection is received within twenty-four hours, the Debtor can place the appropriate sales order. All net proceeds not paid to Ms. Voutaz to obtain the release of her security interest shall be held subject to further Court order or a confirmed plan of liquidation. In addition, the order authorizing the motion should be effective upon entry pursuant to Bankruptcy Rule 6004(h).

DATED this 13th day of January, 2015.

                                        Miller Toone, P.C.


                                        */s/ Blake D. Miller*
                                        Blake D. Miller
                                        Deborah R. Chandler
                                        Proposed Attorneys for the Debtor

## CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)

   I hereby certify that on January 13, 2015, I electronically filed the foregoing **MOTION FOR SALE** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users and will be served through the CM/ECF system:

- ***Deborah Rae Chandler*** *chandler@millertoone.com*
- ***Blake D. Miller*** *miller@millertoone.com, millermobile@gmail.com; miller@ecf.inforuptcy.com; miller.blaked@gmail.com*
- ***United States Trustee*** *USTPRegion19.SK.ECF@usdoj.gov*
- ***Matthew Boley*** *mtb@pkhlawyers.com*

Dated this 13 day of January, 2015.

                MILLER TOONE, P.C.


                /s/ *Blake D. Miller*
                Blake D. Miller
                Deborah R. Chandler
                Attorneys for Debtor